Jack C. Juan, Esq.
MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
Phone: 702-382-0711;
Fax: 702-382-5816

Counsel for Plaintiffs

✓ FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

2003 SEP 24  A 11: 37

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY_____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CV-S-03-1195-HDM-RJJ

ALEX ALCANTAR, DAVEY CAMARGO, BENJAMIN LEYVA, ENRIQUE MUNOZ, ROGER PINNEY, WALTER RAMIREZ, JESUS RODRIGUEZ, RAYMOND SANTOS, BENJAMIN SILVA

Plaintiffs,

v.

HARRAH'S LAUGHLIN, INC., a Nevada Corporation; HARRAH'S OPERATING COMPANY, a Delaware Corporation, HARRAH'S ENTERTAINMENT, INC., a Delaware Corporation; DOES 1 through 100; and DOE CORPORATIONS Alpha through Omega, inclusive,

Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

PLAINTIFFS THROUGH COUNSEL, COMPLAIN AND ALLEGE AS FOLLOWS:

## THE PARTIES

1. Plaintiff ALEX ALCANTAR ("Alcantar") is, and at all times herein mentioned was,

1

COMPLAINT

1. a resident of the County of Los Angeles, California.

2. Plaintiff DAVEY CAMARGO ("Camargo") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

3. Plaintiff BENJAMIN LEYVA ("Leyva") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

4. Plaintiff ENRIQUE MUNOZ ("Munoz") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

5. Plaintiff ROGER PINNEY ("Pinney") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

6. Plaintiff WALTER RAMIREZ ("Ramirez") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

7. Plaintiff JESUS RODRIGUEZ ("Rodriguez") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

8. Plaintiff RAYMOND SANTOS ("Santos") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

9. Plaintiff BENJAMIN SILVA ("Silva") is, and at all times herein mentioned was, a resident of the County of Los Angeles, California.

10. Defendant HARRAH'S LAUGHLIN, INC., hereinafter referred to as "HLI," is, and at all times herein mentioned was, a Nevada Corporation with its principal place of business in the State of Nevada, in Clark County.

11. Defendant HARRAH'S ENTERTAINMENT, INC., hereinafter referred to as "HEI," is, and at all times herein mentioned was, a Delaware corporation with its principal place of business in the State of Nevada, in Clark County.

12. Defendant HARRAH'S OPERATING COMPANY, hereinafter referred to as "HOC," is, and at all times herein mentioned was, is, and at all times herein mentioned was, a Delaware corporation with its principal place of business in the State of Nevada, in Clark County.

## JURISDICTION AND VENUE

13. This Court has jurisdiction under 28 U.S.C. § 1332.

14. Venue is proper under 28 U.S.C. § 1391 in that defendants reside and do business in the Southern District of Nevada and the action arises in the Southern District of Nevada.

15. Plaintiffs demand a trial by jury.

## COMMON ALLEGATIONS

16. Collectively, HLI, HEI and HOC shall hereinafter be referred to as "HARRAH'S." As Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, HLI, HEI, HOC, DOES 1 through 100 as well as Doe Corporations Alpha through Omega, inclusive, were each other's agent, servant, employee, alter ego, parent or subsidiary corporation and/or associate of the other, and was at all times acting within the course and scope of such relationship.

17. Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, HARRAH'S LAUGHLIN, INC. was a mere shell, instrumentality and conduit through which HARRAH'S ENTERTAINMENT, INC., DOES 1 through 100, and/or Doe Corporations Alpha through Omega, and each of them, carried on their business activities. Plaintiffs are informed and believes, and based thereon allege that Defendants, and each of them, have exercised and continue to exercise complete control and dominance over the business of HARRAH'S LAUGHLIN, INC. and/or the Harrah's Laughlin Hotel and Casino to such an extent that any individuality or separateness of them does not, and at all times here mentioned did not, exist.

18. Plaintiffs are informed and believe, and based thereon allege, that adherence to the fiction of the separate existence of HARRAH'S ENTERTAINMENT, INC. as an entity distinct from HARRAH'S LAUGHLIN, INC., DOES 1 through 100 and Doe Corporations Alpha through Omega, inclusive, would permit an abuse of the corporate privilege and would promote injustice in that, among other reasons, HARRAH'S ENTERTAINMENT, INC., DOES 1 through 100 and Doe Corporations Alpha through Omega, and each of them, used and still use HARRAH'S LAUGHLIN, INC. as a device only to avoid individual liability.

19. Plaintiffs are ignorant of the true names of defendants sued herein as DOES 1 through 100, inclusive, and, therefore, sue these defendants by such fictitious names. Plaintiffs will amend this complaint to insert their true names when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants is, and at all times herein mentioned

1  was, in the business of providing security for hotel-casinos, in the business of managing hotel-
2  casinos, in the business of law enforcement and protection, or an individual, group, society,
3  organization or entity which sought out and targeted members of the Mongols Motorcycle Club
4  (hereinafter "the MMC"). Plaintiffs are informed and believe, and based thereon allege, that each
5  such defendant participated in and/or contributed to the acts complained of herein or otherwise is
6  liable therefor, and that Plaintiffs' damages as alleged herein were directly and proximately caused
7  by the acts of each such defendants.

8      20.    Plaintiffs are ignorant of the true names of corporate defendants sued herein as
9  CORPORATE DOES Alpha through Omega, inclusive, and, therefore, sue these defendants by such
10 fictitious names. Plaintiffs will amend this complaint to insert their true names when ascertained.
11 Plaintiffs are informed and believe and thereon allege that each of these fictitiously named
12 defendants is, and at all times herein mentioned was, in the business of providing security for hotel-
13 casinos, in the business of managing hotel-casinos, in the business of law enforcement and
14 protection, or an individual, group, society, organization or entity which sought out and targeted
15 members of the MMC. Plaintiffs are informed and believe, and based thereon allege, that each such
16 defendant participated in and/or contributed to the acts complained of herein or otherwise is liable
17 therefor, and that Plaintiffs' damages as alleged herein were directly and proximately caused by the
18 acts of each such Defendants.

19 <center>**FACTS COMMON TO ALL ALLEGATIONS**</center>

20     21.    Defendants and each of them at all times herein mentioned knew and intended that
21 from approximately April 25, 2002 through April 29, 2002, numerous persons and members of the
22 motorcycling public would congregate in the City of Laughlin, Nevada for the annual Laughlin River
23 Run Event and that particularly, members of The MMC would be present. Defendants knew that the
24 Hell's Angels, a motorcycle club described by law enforcement as a "Biker Gang" would also be in
25 attendance at this event. Defendants knew or reasonably should have known that there was a high
26 probability that the Hell's Angels would likely do, or attempt to do serious harm to members of The
27 MMC.

28     22.    Plaintiffs are informed and believe that the DOE and CORPORATE DOE defendants,

<center>4</center>

knew that there was a high probability that the Hell's Angels would instigate violence or seek out members of the MMC during this event to attack.

23. Plaintiffs are informed and believe that HARRAH'S directly knew and had been warned by law enforcement agencies, and by the DOE and CORPORATE DOE defendants, that there was a high probability that the Hell's Angels would instigate violence or seek out to attack members of the MMC during this event. Defendant's own security department knew of this real threat to members of the MMC.

24. Plaintiffs were members of the MMC.

25. On or about April 25, 2002, Plaintiffs arrived at HARRAH'S Laughlin Casino and Hotel ("Hotel") located at 2900 South Casino Drive, Laughlin, Nevada, 89109.

26. As the MMC members arrived, HARRAH'S required each of them to surrender anything that could be considered a weapon, thus effectively insuring that all of the MMC were unarmed and defenseless.

27. On the morning of April 27, 2002, between 2:00 a.m. and 3:00 a.m., Plaintiffs were seated in the Hotel's main casino area and in an adjacent bar of the Hotel. Plaintiffs were unarmed.

28. Defendants were advised in advance and knew that approximately seventy (70) Hell's Angels were in route to HARRAH'S and allowed them entry onto their premises. HARRAH'S employees witnessed numerous Hell's Angels coming through the doors with guns, knives and various other weapons in hand and ready for use. HARRAH'S did nothing to prevent the entry of the Hell's Angels.

29. Plaintiffs saw approximately 70 Hell's Angel's enter the casino and saw the weapons they brandished. During the time the Hell's Angels entered the Hotel, Plaintiffs did not observe any Hotel security personnel, agents/employees of HARRAH'S or any person attempt to stop the Hell's Angels or ask that the weapons carried by the Hell's Angels be left outside or to completely disarm the Hell's Angels.

30. The Hell's Angels then attacked Plaintiffs using guns, knives, hammers, fists and other weapons. Plaintiffs sustained severe personal injuries.

31. Plaintiffs waited for police and paramedics to arrive and then were taken for medical

5

COMPLAINT

1 care.

2     32. Plaintiffs received medical care and some were hospitalized in Las Vegas.

### NEGLIGENCE

(Against All Defendants)

33. Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 32 hereinabove as though set forth in full herein.

34. Defendants, and each of them, owed Plaintiffs a duty to maintain safety at the Laughlin River Run Event and while Plaintiffs were patrons and guests at the HARRAH'S Hotel. Moreover, Defendants, and each of them, had a duty to take reasonable precautions to protect the event participants from violent acts of third parties. It was foreseeable that violence and injury would occur if Defendants, and each of them, allowed Hell's Angels into and/or onto property where it was known by each Defendant that the MMC members were staying at HARRAH'S Hotel.

35. Defendants, and each of them, breached their duty of care to Plaintiffs, and all event participants and the Hotel guests, by, including but not limited to, failing to protect Plaintiffs, failing to provide adequate security at the 2002 Laughlin River Run event, failing to provide adequate security at the Hotel, failing to disarm the Hell's Angels before entering the Hotel, failing to prevent the Hell's Angels' entry onto the Hotel's premises, failing to prevent the Hell's Angels' entry into the Hotel's casino area and failing to warn Plaintiffs and other members of the MMC that the Hell's Angels were coming, or planning to come to the hotel.

36. As a direct and proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were wrongfully injured on April 27, 2002 while inside the Hotel during the 2002 Laughlin River Run Event.

37. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs sustained serious and permanent injuries to their health, strength and activity, as well as severe shock to their physical and nervous systems and were caused to suffer extreme physical and mental pain, all to their damage.

38. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were required to and did employ physicians, surgeons and

other health care providers and incurred expenses therefor, and incurred additional medical expenses for hospital bills and other incidental medical expenses, all to their further damage.

39. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs will be required to incur additional medical expense in the future, all to their further damage.

40. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were prevented from attending to their usual occupations and/or professions during the period of their injury and recovery beginning on April 29, 2002, and thereby lost earnings in an amount to be proven at trial. Plaintiffs are informed and believe and thereon allege that they will thereby be further prevented from attending to their usual occupation and/or profession in the future and will thereby sustain future loss of earnings all to their further damage.

41. As the direct and proximate result of the foregoing, Plaintiffs have been generally damaged in a sum to be established according to proof.

## BATTERY

(Against DOES 1-75)

42. Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 32 hereinabove as though set forth in full herein.

43. Doe Defendants intended to cause and did cause a harmful contact with Plaintiffs' persons.

44. Plaintiffs did not consent to Defendants' acts.

45. As a direct and proximate result of Doe Defendants' conduct, Plaintiffs suffered serious bodily injury. Plaintiffs also suffered extreme mental anguish and physical pain. These injuries have caused Plaintiffs to suffer general damages in an amount to be determined by proof at trial.

46. As a further proximate result of Doe Defendants' conduct as described above, Plaintiffs were required to and did employ physicians, surgeons and other health care providers and incurred expenses therefor, and incurred additional medical expanses for hospital bills and other

7

COMPLAINT

1. incidental medical expenses, all to their further damage.

47. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were prevented from attending to their usual occupations and/or professions during the period of their injury and recovery beginning on April 29, 2002, and thereby lost earnings in an amount to be proven at trial. Plaintiffs are informed and believe and thereon allege that they will thereby be further prevented from attending to their usual occupation and/or profession in the future and will thereby sustain future loss of earnings all to their further damage.

48. As the direct and proximate result of the foregoing, Plaintiffs have been generally damaged in a sum to be established according to proof.

49. Doe Defendants acts were done knowingly, willfully, and with malicious intent, and Plaintiffs are entitled to punitive damages in an amount to be determined by proof at trial.

## PREMISES LIABILITY

(Against HARRAH'S, DOES 75 -100, CORPORATE DOES Alpha - Omega)

50. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 32 hereinabove as though set forth in full herein.

51. At all times mentioned in this Complaint, Defendants, and each of them, owned and operated a hotel/casino known as "Harrah's Laughlin Casino and Hotel" ("Hotel"), located at 2900 South Casino Drive, City of Laughlin, Clark County, Nevada, 89109. Defendants invited the general public, including Plaintiffs, to enter the premises of the Hotel and to sleep in their guest rooms, gamble in the casino and patron the bars and restaurants located therein.

52. On April 27, 2002, between 2:00 a.m. and 3:00 a.m., numerous Hell's Angels entered the Hotel with guns, knives and various other weapons in hand and ready for use. Plaintiffs were seriously injured during the chaos that ensued after the Hell's Angels attacked them.

53. Defendants, as owners and operators of the Hotel negligently:

   a. Failed to maintain the Hotel in a reasonably safe manner;

   b. Allowed Hell's Angels to come onto the property of the Hotel when

8

COMPLAINT

HARRAH'S had the means and opportunity to deny them entry;

c. Allowed Hell's Angels to enter the casino area and/or main area of the Hotel with knowledge that they were carrying weapons;

d. Failed to warn the invited guests of the Hotel of the danger presented by the arrival of the Hell's Angels;

e. Failed to provide adequate security at the Hotel for its invited guests;

f. Failed to protect the Hotel's invited guests from the Hell's Angels; and

g. Failed to otherwise exercise due care with respect to the matters alleged herein.

54. As a direct and proximate result of the negligence of Defendants, and each of them, as set forth above, Plaintiffs were seriously injured while in the Hotel on April 27, 2002.

55. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs sustained serious and permanent injuries to their health, strength and activity, as well as severe shock to their physical and nervous systems and were caused to suffer extreme physical and mental pain, all to their damage.

56. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were required to and did employ physicians, surgeons and other health care providers and incurred expenses therefor, and incurred additional medical expanses for hospital bills and other incidental medical expenses, all to their further damage.

57. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs will be required to incur additional medical expense in the future, all to their further damage.

58. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were prevented from attending to their usual occupations and/or professions during the period of their injury and recovery beginning on April 29, 2002 and thereby lost earnings. Plaintiffs are informed and believe and thereon allege that they will thereby be

9

COMPLAINT

further prevented from attending to their usual occupations and/or professions in the future and will thereby sustain future loss of earnings all to their further damage.

59. As the direct and proximate result of the foregoing, Plaintiffs have been generally damaged in a sum to be established according to proof.

## FRAUD

(Against HARRAH'S, DOES 76-100, CORPORATE DOES Alpha - Omega)

60. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 32 hereinabove as though set forth in full herein.

61. On or about April 25, 2002 to April 27, 2002, Defendants, and each of them, falsely and fraudulently represented to Plaintiffs and other members of The MMC that they would protect them and maintain their safety while at the 2002 Laughlin River Run Event.

62. The representations made by Defendants, and each of them, were in fact false. The true facts were that Defendants knew that if the Hell's Angels approached members of the MMC, including entering the Hotel where the MMC members were staying, or the property of HARRAH'S, they were not going to take any actions to protect Plaintiffs, its guests and the members of the MMC, all of whom were their guests and invitees.

63. When Defendants, and each of them, made these representations, they knew them to be false, and these representations were made by Defendants with the intent to defraud and deceive Plaintiffs and the members of the MMC and with the intent to induce them to act in the manner herein alleged, namely stay in the Hotel and spend their money at the Hotel's casino, gaming machines and tables, restaurants and bars, in addition to patronizing the various concerts and events connected to the River Run Event at the Hotel.

64. Plaintiffs, at the time these representations were made by Defendants, and each of them, and at the time they took the actions herein alleged, were ignorant of Defendants' secret intention not to perform and could not, in the exercise of reasonable diligence, have discovered Defendants' secret intention. In reliance on these representations, Plaintiffs were induced to and did patronize the Hotel's casino and restaurant/bars. Had Plaintiffs known the actual facts, they would

not have taken such action. Plaintiffs' reliance on defendants' representations were justified because defendants, and each of them, represented that the event was safe. Moreover, Defendants HARRAH'S represented that the Hotel was safe and appeared to work with members of the MMC in an attempt to maintain a safe and peaceful environment within the Hotel.

65. As a direct and proximate result of Defendants', and each of them, intentional misrepresentations, Plaintiffs were wrongfully injured on April 27, 2002 while inside the Hotel during the 2002 Laughlin River Run Event.

66. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs sustained serious and permanent injuries to their health, strength and activity, as well as severe shock to their physical and nervous systems and were caused to suffer extreme physical and mental pain, all to their damage.

67. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs were required to and did employ physicians, surgeons and other health care providers and incurred expenses therefor, and incurred additional medical expanses for hospital bills and other incidental medical expenses, all to their further damage.

68. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants', and each of them, actions as described above, Plaintiffs will be required to incur additional medical expense in the future, all to their further damage.

69. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were prevented from attending to their usual occupations and/or professions during the period of their injury and recovery beginning on April 29, 2002 and thereby lost earnings. Plaintiffs are informed and believe and thereon allege that they will thereby be further prevented from attending to their usual occupations and/or professions in the future and will thereby sustain future loss of earnings all to their further damage.

70. As the direct and proximate result of the foregoing, Plaintiffs have been generally damaged in a sum to be established according to proof.

71. Further, Defendants, and each of them, did the things herein alleged fraudulently,

11

COMPLAINT

maliciously and to oppress Plaintiffs. Plaintiffs are therefore entitled to punitive damages in an amount to be determined later.

### NEGLIGENT MISREPRESENTATION

(Against, HARRAH'S, DOES 76-100, CORPORATE DOES Alpha - Omega)

72. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 32 hereinabove as though set forth in full herein.

73. On or about April 25, 2002 to April 27, 2002, Defendants, and each of them, falsely and negligently represented to Plaintiffs and other members of the MMC that they would protect them and maintain their safety while at the Hotel.

74. The representations made by Defendants, and each of them, were in fact false. The true facts were that Defendants knew that if the Hell's Angels approached members of the MMC, including entering the Hotel or the property of HARRAH'S, they were not going to take any actions to protect Plaintiffs, its guests and the members of the MMC, all of whom were their guests and invitees.

75. When Defendants, and each of them, made these representations, they should have known them to be false, and these representations were made by Defendants negligently as Defendants made these statements to keep Plaintiffs and other members of the MMC in their facility to spend more money while gambling and enjoying the amenities.

76. Plaintiffs, at the time these representations were made by Defendants, and each of them, and at the time they took the actions herein alleged, were ignorant of Defendants' negligence and could not, in the exercise of reasonable diligence, have discovered Defendants' negligence or misrepresentations. In reliance on these representations, Plaintiffs were induced to and did patronize the Hotel's casino and restaurant/bars. Had Plaintiffs known the actual facts, they would not have taken such action. Plaintiffs' reliance on defendants' representations were justified because defendants, and each of them, represented that the premises were safe. Moreover, Defendants HARRAH'S represented that the Hotel was safe and appeared to work with members of the MMC in an attempt to maintain a safe and peaceful environment within the Hotel.

77. As a direct and proximate result of the actions of Defendants, and each of them, as set forth above, Plaintiffs wereseriously injured while in the HARRAH'S Casino and Hotel on April 27, 2002 during the 2002 Laughlin River Run Event.

78. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs sustained serious and permanent injuries to their health, strength and activity, as well as severe shock to their physical and nervous systems and werecaused to suffer extreme physical and mental pain, all to their damage.

79. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs were required to and did employ physicians, surgeons and other health care providers and incurred expenses therefor, and incurred additional medical expanses for hospital bills and other incidental medical expenses, all to their further damage.

80. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants', and each of them, actions as described above, Plaintiffs will be required to incur additional medical expense in the future, all to their further damage.

81. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were prevented from attending to their usual occupations and/or professions during the period of their injury and recovery beginning on April 29, 2002 and thereby lost earnings. Plaintiffs are informed and believe and thereon allege that they will thereby be further prevented from attending to their usual occupations and/or professions in the future and will thereby sustain future loss of earnings all to their further damage.

82. As the direct and proximate result of the foregoing, Plaintiffs have been generally damaged in a sum to be established according to proof.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(Against ALL DEFENDANTS)

83. The allegations of paragraphs 1 through 82 are realleged and incorporated herein by reference.

84. The acts described above have been intentional and malicious, and done for the purpose of causing Plaintiffs to suffer anguish, despair and emotional distress. All of the same Defendants' actions were authorized or ratified by said Defendants with knowledge that Plaintiffs' emotional distress would increase and done with wanton and reckless disregard for the consequences to Plaintiffs and were uncivilized.

85. As a direct and proximate result of Defendants', and each of them, intentional misrepresentations, Plaintiffs were wrongfully injured on April 27, 2002 while inside the Hotel during the 2002 Laughlin River Run Event.

86. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs sustained serious and permanent injuries to their health, strength and activity, as well as severe shock to their physical and nervous systems and were caused to suffer extreme physical and mental pain, all to their damage.

87. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs were required to and did employ physicians, surgeons and other health care providers and incurred expenses therefor, and incurred additional medical expanses for hospital bills and other incidental medical expenses, all to their further damage.

88. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants', and each of them, actions as described above, Plaintiffs will be required to incur additional medical expense in the future, all to their further damage.

89. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were prevented from attending to their usual occupations and/or professions during the period of their injury and recovery beginning on April 29, 2002 and thereby lost earnings all to their further damage. Plaintiffs are informed and believe and thereon allege that they will thereby be further prevented from attending to their usual occupations and/or

14

COMPLAINT

professions in the future and will thereby sustain future loss of earnings all to their further damage.

90. As the direct and proximate result of the foregoing, Plaintiffs have been generally damaged in a sum to be established according to proof.

91. Further, Defendants, and each of them, did the things herein alleged fraudulently, maliciously and to oppress Plaintiffs. Plaintiffs are therefore entitled to punitive damages in an amount to be determined later.

## **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

(Against ALL DEFENDANTS)

92. The allegations of paragraphs 1 through 91 are realleged and incorporated herein by reference.

93. The Defendants' conduct was of a nature that Defendants reasonably should have known that it was likely to, and did, cause Plaintiffs extreme emotional distress.

94. Defendants, and each of them, owed Plaintiffs a duty to maintain safety while Plaintiffs were patrons and guests at the HARRAH'S Hotel. Moreover, Defendants, and each of them, had a duty to take reasonable precautions to protect the event participants from violent acts of third parties. It was foreseeable that violence and injury would occur if Defendants, and each of them, allowed Hell's Angels into and/or onto property where it was known by each Defendant that the MMC members were staying at HARRAH'S Hotel.

95. Defendants, and each of them, breached their duty of care to Plaintiffs, and all event participants and the Hotel guests, by, including but not limited to, failing to protect Plaintiffs, failing to provide adequate security at the 2002 Laughlin River Run Event, failing to provide adequate security at the Hotel, failing to disarm the Hell's Angels before entering the Hotel, failing to prevent the Hell's Angels' entry onto the Hotel's premises, failing to prevent the Hell's Angels' entry into the Hotel's casino area and failing to warn Plaintiffs and other members of the MMC that the Hell's Angels were coming.

96. As a direct and proximate result of Defendants', and each of them, intentional

15

COMPLAINT

misrepresentations, Plaintiffs were wrongfully injured on April 27, 2002 while inside the Hotel during the 2002 Laughlin River Run Event.

97. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs sustained serious and permanent injuries to their health, strength and activity, as well as severe shock to their physical and nervous systems and were caused to suffer extreme physical and mental pain, all to their damage.

98. As a further proximate result of Defendants', and each of them, actions as described above, Plaintiffs were required to and did employ physicians, surgeons and other health care providers and incurred expenses therefor, and incurred additional medical expanses for hospital bills and other incidental medical expenses, all to their further damage.

99. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants', and each of them, actions as described above, Plaintiffs will be required to incur additional medical expense in the future, all to their further damage.

100. As a further proximate result of Defendants', and each of them, breach of duty owed to Plaintiffs as described above, Plaintiffs were prevented from attending to their usual occupations and/or professions during the period of their injury and recovery beginning on April 29, 2002 and thereby lost earnings. Plaintiffs are informed and believe and thereon allege that they will thereby be further prevented from attending to their usual occupations and/or professions in the future and will thereby sustain future loss of earnings all to their further damage.

101. As the direct and proximate result of the foregoing, Plaintiffs have been generally damaged in a sum to be established according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests relief as follows:

    a.      For compensatory economic damages according to proof;

    b.      For compensatory non-economic damages according to proof;

    c.      For interest on the amount of losses incurred in special damages at the

prevailing legal rate;

d.  For punitive damages according to proof;

e.  For costs incurred by Plaintiffs, in bringing their suit; and

f.  For such other and further relief as the Court may deem proper.

Dated: September 18, 2003            MARQUIS & AURBACH,

_____
JACK C. JUAN
Attorney for Plaintiffs

COMPLAINT